ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/4/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BLACK TUSK HELICOPTERS, INC.,

                    Plaintiff,

        - against -

KAMAN AEROSPACE CORPORATION,

                    Defendant.

---

24 Civ. 4259 (JHR)

OPINION & ORDER

Defendant Kaman Aerospace Corporation ("Kaman") moves to partially dismiss plaintiff Black Tusk Helicopters, Inc.'s ("Black Tusk") Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the partial motion to dismiss is granted.

## Background

The following facts are taken from Black Tusk's Complaint and presumed true for the purposes of this motion. (Dkt. No. 1). The Court also considers an Aircraft Sale Agreement submitted with defendant's motion to dismiss because it is integral to plaintiff's breach of contract claims. See Def. Br., ex. A (hereinafter "Agreement") (Dkt. No. 14-1). "When a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the

- 1 -

document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (internal citation omitted).

On January 12, 2021, Black Tusk purchased a K-Max Helicopter 1200 Series aircraft (the "Helicopter") from Kaman for $7,250,000. Compl. ¶¶ 14-15. The parties entered into an Aircraft Sale Agreement (the "Agreement"), which established the transaction's terms, warranties, and limitations of liabilities. Kaman knew Black Tusk intended to use the aircraft commercially for its heli-logging and wildfire suppression business, and it advertised the Helicopter as an "aerial truck" and "heavy lift mission helicopter" suitable for external load or air-lift commercial use. Id. ¶¶ 21, 23.

After approximately six months of use, the Helicopter's servo flap failed in-flight, resulting in a crash that caused the death of the pilot and the total loss of the aircraft. Id. ¶ 2, 45. Black Tusk alleges Kaman knew of at least three prior K-Max Helicopter crashes caused by servo flap failures, yet it continued to market the helicopters as airworthy. Id. ¶¶ 34, 41.

Pursuant to Section 4 of the Agreement, Kaman warranted that the Helicopter was free of defects under normal use and service for a period of two years or one thousand flight hours, whichever occurred first. Agreement § 4.1. If Black Tusk

- 2 -

notified Kaman of any defects during this period, Kaman was obligated to inspect the aircraft and repair and replace any defective parts. Agreement § 4.3. The crash occurred during the warranty period. Compl. ¶ 59. Kaman concedes that if it is found liable for the crash, Black Tusk can recover the total value of the Helicopter. See Def. Br. at 7 (Dkt. No. 14); Def. Reply Br. at 9 (Dkt. No. 24).

In addition to the warranty provisions, the Agreement contained the following terms relevant to the present motion:

> 4.5 DISCLAIMER OF WARRANTIES. OTHER THAN THE LIMITED WARRANTIES CONTAINED IN THIS SECTION 4, KAMAN MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND WITH RESPECT TO THE AIRCRAFT AND ITS PARTS, AND HEREBY DISCLAIMS ALL OTHER WARRANTIES WHETHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING, BUT NOT LIMITED TO: (I) THE CONDITION, OPERATION, FITNESS FOR USE OR MERCHANTABILITY OF THE AIRCRAFT AND ITS PARTS; (II) THE FITNESS OF THE AIRCRAFT AND ITS PARTS FOR ANY PARTICULAR PURPOSE; (III) THE AIRWORTHINESS OF THE AIRCRAFT AND ITS PARTS SUBSEQUENT TO DELIVER; OR (IV) ANY OTHER MATTER WHATSOEVER.
>
> 5.1 LIMITATION OF LIABILITY. EXCEPT FOR THE COST OF REPAIRING OR REPLACING A PART PURSUANT TO SUBSECTION 4.2 OR 4.3, KAMAN SHALL NOT BE LIABLE FOR ANY DEFECTS, EITHER LATENT OR PATENT, IN THE AIRCRAFT OR ITS PARTS. IN NO EVENT SHALL KAMAN BE LIABLE TO BUYER OR ANY OTHER PERSON OR ENTITY FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE AIRCRAFT PURCHASED HEREUNDER, INCLUDING WITHOUT LIMITATION, ANY DAMAGES FOR DIMINUTION OF MARKET VALUE, LOSS OF USE OF THE AIRCRAFT, LOSS OF PROFITS OR OTHER FINANCIAL OR ECONOMIC LOSS, OR FOR ANY INTERRUPTION IN BUYER'S BUSINESS OCCASIONED BY ITS INABILITY TO USE THE AIRCRAFT FOR ANY REASON WHATSOEVER, EVEN IF KAMAN HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR LOSSES.

Agreement §§ 4.5 and 5.1.

Kaman argues these terms bar Black Tusk's claims for consequential damages, breach of implied warranty of merchantability and fitness, strict liability, and negligence. Black Tusk does not oppose the dismissal of the strict liability and negligence claims. See P. Br. at 2 (Dkt. No. 20). However, it maintains its claims for consequential damages for lost profits and argues "[a]ny limitations of liability in the Aircraft Sale Agreement are not enforceable as a matter of New York state law and public policy." Compl. ¶ 55.

### Legal Standard

### I.    Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6), the Court accepts "all factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." Kelly-Brown v. Winfrey, 717 F.3d 295, 304 (2d Cir. 2013).

To survive a motion to dismiss, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## II.   New York Uniform Commercial Code

The parties agree New York law governs this dispute and that New York's Uniform Commercial Code ("UCC") applies because the Agreement is a contract for the sale of goods. See St. Anne-Nackawic Pulp Co. v. Rsch.-Cottrell, Inc., 788 F.Supp 729, 734 (S.D.N.Y. 1992) ("Because the Contract is primarily a contract for the sale of goods, it is governed by Article Two of the Uniform Commercial Code.").

Under New York law, contract terms limiting liability are generally enforceable because they represent "the parties' Agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor." Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc., 84 N.Y.2d 430, 436 (1994).

New York's UCC permits parties to a sales contract to limit or exclude consequential damages unless such limitation or exclusion is unconscionable. N.Y. U.C.C. Law § 2-719(3). Parties may also exclude or modify an implied warranty of merchantability, so long as the exclusion mentions merchantability and is conspicuous. N.Y. U.C.C. Law § 2-316(2).

### Discussion

Black Tusk argues the Agreement's terms cannot be enforced because they are unconscionable, or, in the alternative, voided by Kaman's gross negligence. The Court considers each argument

- 5 -

and finds that Black Tusk does not plausibly allege unconscionability and that gross negligence is not a viable legal theory under the UCC.

## I.    Unconscionability

Determination of unconscionability is a question of law for the Court to decide. McNally Wellman Co., a Div. of Boliden Allis v. New York State Elec. & Gas Corp., 63 F.3d 1188, 1198 (2d Cir. 1995). "In cases involving transactions of a commercial nature, courts have rarely found unconscionability, and it has been held that when businessmen contract in a commercial setting, a presumption of conscionability arises." Cayuga Harvester, Inc. v. Allis-Chalmers Corp., 95 A.D.2d 5, 20 (1983) (internal citation omitted). To plead unconscionability, parties must demonstrate both procedural unconscionability, such as deceptive negotiating tactics or disparate bargaining power, and substantive unconscionability, such as terms that unreasonably favor one party over the other.  See Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10-12 (1988).

The Agreement is not procedurally or substantively unconscionable. The transaction is indisputably commercial in nature: two sophisticated business entities negotiated the sale of a specialized, heavy-duty, multi-million dollar aircraft meant to be used in Black Tusk's heli-logging and wildfire suppression business. The majority of the Agreement is formatted

in sentence case, but the sections disclaiming warranties and consequential damages are in conspicuous capital letters. Black Tusk makes no claim Kaman exercised a monopoly on commercial helicopter sales.

The exclusion of consequential damages does not unreasonably favor Kaman or deprive Black Tusk of the "substantial value of the bargain." McNally, 63 F.3d at 1197 (internal citation omitted). If Black Tusk can establish Kaman's liability it will receive exactly what it contracted for: the value of a K-Max Helicopter. The Agreement's terms are not unconscionable, and Black Tusk's claims for consequential damages and breach of implied warranty of fitness and merchantability are dismissed.

## II.  Gross Negligence

Black Tusk argues that even if the Agreement is not unconscionable, Kaman's "gross negligence and reckless disregard" voids any limitations on liability. Compl. ¶ 43. The Court will not create a gross negligence exception to the UCC's explicit text.

The UCC's text is clear. Contract terms limiting consequential damages are to be enforced "unless the limitation or exclusion is unconscionable." See N.Y. U.C.C. Law § 2-719(3); N.Y. U.C.C. Law § 2-316(4). "[T]he provision contains no other explicit exceptions." McNally, 63 F.3d at 1196. When a legislature explicitly includes one exception in the text of a

statute, it is implied that all others are excluded. <u>Brennan-Centrella v. Ritz-Craft Corp. of Pennsylvania</u>, 942 F.3d 106, 111 (2d Cir. 2019).

A gross negligence exception also subverts the UCC's purpose, which is "to simplify, clarify, and modernize the law governing commercial transactions." N.Y. U.C.C. Law § 1-103(a)(1). Here, two sophisticated business entities negotiated an Agreement that reciprocally allocated risk and liability. The Agreement's limitations are presumed enforceable by the UCC and New York public policy. <u>See</u> <u>McNally</u>, 63 F.3d at 1195 ("It is axiomatic that parties to a contract must remain free to allocate risks and shield themselves from liability.").

One section of the Agreement not at issue here indemnifies Kaman from liability for personal injury unless the injuries were caused by Kaman's "gross negligence or willful misconduct." Agreement § 3.4(d). But this language is not repeated in the sections limiting warranties or consequential damages. "Under New York law, if parties to a contract omit terms, the inescapable conclusion is that the parties intended the omission." <u>CH Acquisitions 2, LLC v. Aquila Aviation L.P.</u>, 2018 WL 2081860, at *10 (S.D.N.Y. Mar. 30, 2018) (internal citations and quotation marks omitted). Black Tusk and Kaman are entitled to rely on the Agreement's carefully negotiated, intentional,

and unambiguous terms. New York's UCC affords them this predictability and certainty.

Finally, Black Tusk does not cite any caselaw, nor is the Court aware of any, where gross negligence rendered a contractual limitation on consequential damages unenforceable under New York's UCC. Black Tusk correctly notes that some courts in this Circuit have considered, without deciding, whether a defendant's bad faith prevents the enforcement of contractual limitations on liability. See, e.g., Cnty. Asphalt, Inc. v. Lewis Welding & Eng'g Corp., 323 F. Supp. 1300, 1308 (S.D.N.Y. 1970) ("Were the defendant guilty of bad faith, it might have been estopped from asserting exculpatory contractual language."); Long Island Lighting Co. v. Transamerica Delaval, Inc., 646 F. Supp. 1442, 1458 (S.D.N.Y. 1986) ("A defendant may be estopped from asserting a contractual limitation of consequential damages if the defendant has acted in bad faith.").

These cases are unpersuasive. The language cited by Black Tusk is dicta, and many courts have declined to adopt a bad faith or gross negligence exception to the UCC. They instead recognize that when sophisticated parties "unambiguously provided the limit of recovery in the event of breach, [a court] may not re-write how the parties defined their rights and obligations, allocated their risks, and limited their

- 9 -

liabilities and rights of recovery." DynCorp v. GTE Corp., 215 F. Supp. 2d 308, 318 (S.D.N.Y. 2002); see also Metro. Life Ins. Co., 84 N.Y.2d at 436 ("A limitation on liability provision in a contract represents the parties' Agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor."); Those Certain Interested Underwriters, at Lloyd's, London, subscribing to Pol'y No. Z101663/003 v. Farley Grp., 2015 WL 5602924, at *40-41 (N.D.N.Y. Sept. 23, 2015)(holding gross negligence does not invalidate a consequential damages limitation under the UCC).

### Conclusion

Kaman's partial motion to dismiss Black Tusk's claims for consequential damages, breach of implied warranty of merchantability and fitness, strict liability, and negligence is granted.

So ordered.

Dated: New York, New York

March 4, 2026

_Louis L. Stanton_

LOUIS L. STANTON

U.S.D.J.